The next case this morning is 524-0443, People v. Mathus. Arguing for the appellant is Paige Clark-Straughn. Arguing for the appelee is Laura Bilen. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, Your Honor. Justice Welsh is unavailable this morning. He will be listening to recording of the oral argument and will be participating in this disposition. Appellant, if you are ready to proceed, you may do so. Thank you. May it please the court, counsel. I'm Paige Straughn, and I represent Brad Mathus in this case. We raised two issues in our brief. The first was a reasonable doubt issue, and the second is an evidentiary issue. I would like to start with that second issue. A little background on the case is that what we have here is Brad and Stephanie Mathus, who were a newly married couple who had been together for some time. They did not share children between them, but they each have their own children from other relationships. On this day in June or July of 2019, there was an altercation of some nature at the family home. There doesn't seem to be any disagreement as to what led up to whatever happened on that day. But when I get back to the reasonable doubt argument, I will point out the inconsistencies in all of the testimony of the witnesses against Mr. Mathus. He's accused of committing aggravated battery against Stephanie and against her daughter by strangling either or both of them, and then of child endangerment, one count for each child who was present, for pointing a loaded weapon at them during this interaction. The first issue that I want to talk about is the testimony of Stephanie regarding a prior incident of having been choked by Mr. Mathus. It is accurate that the state did not inquire of her whether he had done this before. She volunteered the testimony while being cross-examined that she was being cross-examined about how long she had been choked so that it would have impeded the flow of air so that she couldn't breathe. And her response was that it was long enough, and when crossed further, she said she knows because he had done that before in 2017. This is completely volunteer testimony. That leads to the question of whether or not it was proper testimony. And while the statute does allow, in some circumstances, including charges of domestic battery, for testimony about other incidents to be admitted, first, there has to be some preliminary findings made. First, there has to be a motion so that the defense is on notice that the state would like that information to be considered. That did not happen in this case. Well, how could it have happened here, counsel, when the state didn't seek to introduce this in the first place? Well, that's the problem. It couldn't have. However, the fact that it was volunteered is the most important part of this analysis. The information came out. The court heard it. It was not appropriate for the court to hear that. The state is to be charged with managing its own witnesses. The ultimate question is whether or not that improper testimony about a prior incident prejudiced the defendant. Of course it did. Was there a motion to strike the answer? There was not, unfortunately, and for that reason, we did raise the issue of ineffective assistance of counsel. I can imagine that defense counsel was shocked to have heard it, and he made the most of it. I would have preferred that he moved to strike it, but he didn't. He instead attempted to impeach her with the fact that she had never reported that, that it was the first anyone had heard of that. He had asked if there had been bruises on that occasion, because much of his defense in this case was there was no physical evidence of choking on either of these people, and as it was described, it would have been a fairly violent affair and quite likely would have left bruises. That was part of his defense. So he used her volunteered, almost an outburst, if you will, to impeach her further. Couldn't it be argued that a motion to strike would have simply put more attention on this inappropriate testimony? It certainly could have, yes. It absolutely could have highlighted it even further, and perhaps that was the decision-making that went into it. Obviously, it's impossible to second-guess that at this point, but we do know that had he moved to strike it, that would have been granted, because it was improper testimony, and in a case where we, this is a very definition of a closely balanced evidence, because the only evidence we have is testimony. We don't have any physical evidence to support anything. So any error is going to be prejudicial. There's not a single witness that was completely consistent with another witness. They told, each witness who testified told different stories. Now, not about everything. There seemed to be agreement on what had gone on earlier in the day. You know, they'd spent the day grilling and having family time, and then there had come an argument. In fact, there'd come an argument where Stephanie had pulled a knife on Mr. Mathis and had been disarmed by him. So not disagreement about everything, not at all. But once we get down to talking about the crimes themselves, there's disagreement by virtually every single witness. And much of the testimony was physically impossible. For example, one of the children, the female child with the initials MH, testified that my client had choked HW by putting his arm around her neck, yet somehow he did that while HW was standing behind him. And all the effort I've put into figuring out how in the world you can put your arm around someone's throat if they're standing behind you, and I've not been able to come up with a physical way for that to happen. So that is just one example of the inconsistencies that we heard in this case. Several of the children testified they couldn't even agree on who was supposedly choked first. Was it Stephanie? Was it HW? They don't agree on that. One thing we do know is there's no physical evidence. Now, if a grown man picked a teenage girl up by choking her with his arm around her neck, such that it impeded her breathing, there would certainly be some sort of indication of that, even in the way of a red mark or perhaps a bruise later. We didn't have that. Now, one of the children testified that he saw that, that he saw red marks, but he also testified that Mr. Mathis threatened to chop everybody up into little pieces, too, which is absurd testimony that we didn't hear from anyone else. Interesting testimony, so if he actually had said that, I suspect at least one other person in the house would have remembered that, but that didn't happen either. Also, with respect to these inconsistencies, aren't you simply asking us to retry this case? No, I'm not. I'm asking you to evaluate the second issue in my brief, the one I spoke of first, in light of this evidence in the background, so that I can show you that the improper testimony moved the needle in this case, and thereby prejudicing my client. Without that evidence, it's quite likely that the court never would have found, beyond a reasonable doubt, that these things happened, because there's simply no basis for having found that. There was actually other inconsistencies that are pretty significant. Stephanie and at least one of the children claimed that my client had thrown a TV down the stairs, yet the officer, Officer Tripp, who responded, he didn't see any evidence of that. He didn't think the house was in disarray to speak of, and he did go upstairs, which is where the TV was supposedly thrown from, down the stairs. So, he would have had to have passed this shattered television that Stephanie spoke of, and that another child mentioned, but there was no, he didn't see that. Another peculiar thing was mentioned by one of the children, and that was that Mr. Mathis threw a bottle of A1 steak sauce at another child, and it hit the wall and broke, and there was A1 on the floor. That probably stuck out to me because I love A1, but for some reason I remember that, and it's, you know, it's dirty and messy, the sort of thing that an officer standing in the living room might notice, but we don't have any testimony about that. In fact, we have the opposite of that from Officer Tripp. He didn't see disarray or signs of a struggle. That's interesting. Now, that's the only one with no dog in this fight is Officer Tripp, and of course he has no first-hand knowledge of anything, but he testified as to what he saw, and he didn't see a broken TV, and he didn't see A1 splashed all around. That's interesting. There also was a lot of inconsistencies about the gun pointing at the children, which is the basis of the child endangerment. No one ever saw him, saw Mr. Mathis actually load the gun, except the child's CF, who said he saw him do it in the living room right before he pointed the gun at his own head, and he was about to pull the trigger, according to the defendant's own testimony, on himself when he heard the officer knock at the door, and but for that good fortune, we might not be here today because he was suicidal. He wasn't out to hurt anyone but himself, and but for that officer's knock, he probably would have. Not a single person besides CF testified that they ever saw him load the gun. Now, we have children testifying that they heard things, but what did children know about that? And those that did testify about hearing a bullet racked in the gun or various types of language they used for that, they also conflicted about where the defendant was when they heard that. We didn't ever hear that he discharged the gun, so there wouldn't have been called to put two bullets in the chamber so that perhaps he could have done it in different parts of the home. That didn't happen either. The judge himself, when he ruled, said that he did not find the children credible on the point that they claimed they had never spoken of this incident with anyone after it happened, so he specifically found them to not be believable there. If they're not believable about something that simple, something that easy, why are they believable enough to carry the day on the most important thing? I see your time's expired. I'll give you a brief time to wrap up if you want. Well, I think I've probably made all the points that I can make, and they're a lot easier to read in the brief than to recall, for your honors to recall just from me throwing together all of these consistencies, so I would leave it at that. I would ask that your honors reverse this conviction. I'd ask you to reverse it outright based on reasonable doubt, and if that is not something that this court is willing to do, I would ask that you grant him a new trial at which prejudicial evidence that is improperly presented not be presented. So, that's what we would ask of this court. Thank you. Any further questions, Justice Cates? No, thank you. Thank you, counsel. You'll be granted time for rebuttal. Happily, you may proceed. Oh, you're muted. May I please report, counsel? Laura Bailon on behalf of the people. I'll start with the second issue because opposing counsel has started with the second issue. The second issue, defendant was provided a fair trial, and there were no problems with propensity evidence. This issue was presented as a propensity evidence issue in defendant's brief, with defendant arguing that the people should have filed a motion to admit propensity evidence, but the people didn't file such a motion because they didn't seek to introduce such evidence. There's no evidence the people even knew anything at all about the 2017 incident because when it came up on cross-examination of Stephanie, Stephanie said she never reported it, so the state couldn't manage its own witnesses about something it didn't even know about. Plus, once it came out, the state didn't argue propensity at any point, and the trial judge didn't consider propensity evidence. It's important here that it was a bench trial and not a jury trial. So defendant has assumed that there was prejudice from this consideration of the propensity evidence because how could it not? But in a bench trial, the answer to how could it not is that a trial judge is presumed to know and properly apply the law. And there's no indication that the trial judge considered this improperly as propensity evidence, as there's no evidence the trial judge considered it as significant at all. The trial judge in this case gave a lengthy explanation of his ruling and findings of fact and credibility determinations, spanning about 18 pages of the record, and there's also more explanation when the motion for new trial was denied. And this 2017 incident is never even mentioned once by the trial judge. So there's no reason to think that this evidence that wasn't introduced as propensity, not argued as propensity, the trial judge ignored all that and found this is the critical piece of evidence and its propensity. Counsel was not ineffective in failing to object to testimony about the 2017 incident. As the closing counsel said, he made the most of it and tried to impeach her. How to impeach a witness is a matter of trial strategy. And not only is it generally a matter of trial strategy, it's consistent in this case with him arguing that there would have been marks. And in this prior incident, there were marks. Plus, even if counsel's performance was deficient, there was no prejudice here where it was a bench trial. The trial judge is presumed to know and properly apply the law and the judge didn't even mention this at all in discussing the evidence at some length. Are there any questions on the second issue? Judge Skates? No. You may continue. Concerning the first issue, defendant was proven guilty beyond a reasonable doubt of both counts of aggravated domestic battery and all five counts of endangering the life or health of a child. Critical here is the standard of review. It's very deferential to the trial court who was the finder of fact in this case. The evidence is viewed in the light most favorable to the prosecution and that includes the credibility determinations. Now, the trial judge did mention the credibility as to whether the child witnesses had talked to anyone about this offense and found that that specific piece was not credible. But then the trial judge clearly found that their testimony as to whether these offenses actually happened was credible. The trial judge found on the record that defendant placed Stephanie and HW into chokeholds, applying pressure to their necks with his arm around their necks and impeding their airflow. That's on 413 and 415 of the record. The trial judge also found also on page 415 that defendant lined the whole family up on the couch, counted them off, pointed a loaded gun at them, endangering their lives. So based on those findings, the trial judge found defendant guilty and the guilty verdicts were supported by the evidence. While there were some inconsistencies in the evidence, the evidence was still, it's for the trial judge to determine what to make of those inconsistencies. The trial judge carefully weighed them and still determined that the witnesses, the state's witnesses were credible as to whether these offenses happened. And the testimony of those witnesses that supported those verdicts included for count one, Stephanie's testimony that defendant's arm was around her neck and he was choking her and he restricted her breathing. She demonstrated how and he applied enough pressure that she could not breathe. Also MW, MJ and HW testified that defendant choked Stephanie and he put his arm around her neck and had her in a chokehold. For count two, HW testified that defendant choked her, her breathing was affected, she felt pressure on her neck and she was trying to yell, but she couldn't. And she demonstrated how he was using one arm to push the other arm to put pressure on her neck. Stephanie, MW and MJ also testified that defendant put HW in a chokehold and choked her with his arm around her neck. The trial judge explicitly on the record considered whether marks would have to be left and found that they would not have had to been left. So he did weigh that evidence and concluded it didn't reach the conclusion that defendant wants him to have had it reached. Concerning the endangering the life or health of a child counts, there was evidence that the gun was loaded when it was pointed at the children's heads. There's been mention of Officer Tripp's testimony. Officer Tripp did, she said he testified that Stephanie took him upstairs to see quote stuff that was in disarray that defendant had done. He testified that there were quote things in various disarray that he saw in the home. The broken TV, he said there was a broken television in the bedroom upstairs and the bed was messed up. He couldn't remember if anything was strewn on the floor or anything like that. The fan, it wasn't a TV that was thrown, it was a fan. And the witnesses testified that it was a fan thrown. And I believe they testified that it was at the top of the stairs where it was broken. So also important testimony from Officer Tripp is that he's responding to an open line 911 call. Defendant testified that Stephanie is just the hysterical one and he was so calm, but the witnesses testified about him pointing a gun at HW when she tried to call 911. He made her slide the phone to the floor. So the open 911 call is consistent with Stephanie terrified, calling, having a face down on the couch so that he wouldn't see she was calling. And while the witnesses all heard the sound of a gun being loaded before it was pointed at the children's heads, while that defendant went upstairs, got the gun, came downstairs, and then everyone ended up lined up on the couch in the living room with defendant pointing the gun at them. They all heard that sound in between when he went upstairs to get the gun and when he came downstairs. And it is significant that yes, no one saw it being loaded. And why that's significant is when Officer Tripp located the gun, it was loaded. So we know it was loaded at some point. And if none of the witnesses other than CMF, who the judge found incredible, saw it being loaded, then it must have been loaded when they heard it being loaded. Even defendant said he claimed he racked the slide to clear the chamber. But so even under defendant's own testimony, the sound of the gun being racked would have been heard by the witnesses. So witnesses, Stephanie testified that defendant aimed the gun at all of their heads, counted one, two, three, up to eight, and said he was going to kill them. M.W. testified that he counted their heads one by one and said he was going to kill them. H.W. testified the gun was pointed at all their heads. Defendant was numbering them off and counting each of their heads while waving the gun around. M.J. testified defendant counted their heads with the guns, said he was going to kill them, and that he pointed the gun at everyone. And even CMF testified that defendant did count everyone. While he said that he was just making sure they were there, even that is consistent with what the other witnesses did testify. So the judge was presented with two versions of events, one through defendant and CMF and one through the other witnesses. He chose to believe, he found credible the state's witnesses as to whether the events of the offenses happened. And under the Collins standard, that the trial judge's findings are entitled to deference. So if there are no further questions, the people had asked that this court affirm defendant's convictions and sentences. Judge Skates, any further questions? No questions. Thank you, counsel. Rebuttal? Just very briefly. Regarding the standard of review, the purpose of an appeal is to have meaningful review. It is not to rubber stamp the trial court's decision without looking further into it. That's what we're asking you to do. What the state is asking you to do is presume things. And asking this court to justify the trial court having assumed things. Specifically, what the judge said about defendant coming downstairs with the gun is that he came downstairs with a gun with five children in the house. And that's not good. It's not good. But it is not the same thing as pointing a loaded weapon at their heads, which is what he was charged with. The sound that she refers to of each witness speaking of hearing the gun racked doesn't mean that it was being loaded. The defendant testified he was clearing the chamber. This is a trained military police officer. He knows how to be safe even in the midst of having an emotional situation. He also was very clear in his testimony that he also was upset or he wouldn't have been considering killing himself. And so I think it is a little bit inaccurate to say that he described himself as calm and Stephanie as the hysteric. It's also not inconsistent that the open 9-1-1 line would have revealed some big carryings on in the house. Obviously, things weren't quiet and good. They weren't having a quiet dinner. But having an argument and yelling is not the same thing as choking someone to impede their breath and endangering the life of children by pointing a loaded weapon at their head. For the judge to have reached those conclusions, he had to have skipped a couple of steps. Can't just rubber stamp his decision because he made it. We have to evaluate whether there was a basis for him to make it. And there just simply isn't. The testimony all added together by the state's witnesses does not get there. It just is not sufficient to do it when each testimony is completely inconsistent. So applying the standard of review that this court has to apply does not mean we don't look further and that we cannot find what I'm asking you to find now, which is that the trial court did not have a legitimate basis to reach the conclusion that he did. And I did want to correct. She is absolutely right. It was a fan, not a television that was supposedly thrown. I don't know where I came up with that. But it was a fan. It was not a TV. That's correct. And Officer Tripp didn't say anything about finding a broken fan either. Let's see. I would also point out that the judge mentioned not only that the children were not credible about whether they had spoken about the incident afterwards. The boys actually testified. My client's sons testified that they spoke about it in the car as they were leaving when their grandmother took them back to their mothers. He hadn't. It is not accurate that all of the kids said that. And if the judge misremembered that, it's entirely possible that he misremembered other things. As it relates to the judge making no reference to the improper evidence being presented, that he didn't mention it doesn't mean that it didn't carry some weight because it's the only explanation for why he found the way that he did. When otherwise, we just have a big pile of contradictory and consistent testimony. While it's understandable that the judge might feel like something went awry, that is not the same. That's proof beyond a reasonable doubt. And we'd ask that you reverse this conviction, these convictions. Thank you. Any other questions, Justice Cates? No, thank you. All right. Thank you, counsel, for your arguments. We will take this matter under advisement and issue a ruling in due course. Thank you.